**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

|  |  |  |
|---|---|---|
| SIMON B. AMAYA PRICE, | : | |
| Plaintiff, | : | |
| v. | : | Case No. |
| CITY OF NASHUA; and LORI WILSHIRE, President, Board of Aldermen, City of Nashua, in her official and individual capacities, | : | |
| Defendants. | : | |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

INTRODUCTION

Simon Amaya Price knows that his advocacy on behalf of children suffering from gender dysphoria is unpopular with some Americans. He regularly receives death threats because of his opposition to pediatric gender medicine. What Amaya Price did not know, however, is that Nashua's Board of Aldermen would insist that he publicly dox himself before he could exercise his First Amendment rights.

Amaya Price stood up at a Nashua Board of Aldermen meeting to urge the board to vote against a proposed ordinance on the agenda. But before he had spoken more than a few words, the board's president cut Amaya Price off and prevented him from speaking further until he had publicly disclosed his home or business address.

Concerned for his safety if his address became public information, Amaya Price forfeited his time and sat down.

Nashua's address requirement is unconstitutional. It serves no purpose, because Nashua does not impose a residency requirement or any other rule that turns on where a speaker lives or works. And even a valid residency requirement would not justify forcing speakers to dox themselves—because addresses can be verified privately. The address requirement disproportionately deters speakers who want to address controversial topics or take unpopular positions. The government cannot demand that speakers give up their First Amendment rights or else risk harassment, reprisal, and threats to their safety.

This Court should declare Defendants' address requirement unconstitutional, enjoin them from enforcing this rule in the future, and award Amaya Price nominal damages to vindicate his constitutional rights.

THE PARTIES

1.      Plaintiff Simon B. Amaya Price is a natural person and a citizen of Massachusetts and the United States. He resided in Massachusetts during all times relevant to his past actions mentioned in this complaint.

2.      Defendant City of Nashua is a city in southern New Hampshire and the seat of Hillsborough County.

3.      Defendant Lori Wilshire is the President of the City of Nashua's Board of Aldermen and has held that position at all times relevant to the events in this complaint. She is sued in her official and individual capacities.

JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under federal law and challenge Defendants' violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

5.    Venue lies in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred and are occurring in this judicial district and because all Defendants reside in this district.

STATEMENT OF FACTS

*Public Comment at Nashua Board of Aldermen Meetings*

6.    Nashua law provides that regular meetings of the city's Board of Aldermen must include two periods for comment by members of the public.

7.    The first period, which occurs early in the meeting, is "[a] period for the acceptance of orally presented communications or comments from the public or others relative to resolutions, ordinances, or communications . . . upon which final action is expected to be taken at the meeting." Nashua Ord. § 5-14(A)(9a).

8.    Later, close to the end of the meeting, a second public comment period provides "for the acceptance of orally presented communications or comments from the public or others on items not on the agenda or regarding actions taken by the Board during the current meeting." *Id.* § 5-14(A)(16).

9.      A speaker who wishes to comment publicly during either period must, among other things, sign in at the start of the meeting and "identify him or herself by name and addresses (*sic*) when beginning to speak." *Id.* § 5-14(C)(3). Speakers may comment for up to three minutes. *Id.* § 5-14(C)(5).

10.     The Board of Aldermen has a historical practice of accepting either a home address or a business address to satisfy this requirement.

11.     Although the board requires speakers to state their address publicly, it does not have a residency requirement. Members of the public who do not reside in the City of Nashua may offer public comment, in oral or written form, as long as they adhere to the board's rules governing public comment. *See, e.g.*, *id.* § 5-14(A)(9a), (A)(16), (C)(8).

12.     "The presiding officer," usually the President of the Board of the Aldermen, "has authority to terminate the remarks of any speaker" if that speaker does not state the speaker's name and address or "do[es] not adhere" to any other requirement in the applicable law governing public comment. *Id.* § 5-14(C)(11).

*Proposed Ordinance O-26-001*

13.     The City of Nashua possesses four flag poles of varying heights in front of city hall. The city uses three to display governmental flags, such as the American flag and the New Hampshire state flag. But, for several years, the city permitted people to apply to fly a flag of their own choosing on the fourth pole on City Hall Plaza.

4

14.     During these years, the city did not approve all flag applications. Instead, Nashua permitted some private flags to be flown from the fourth flag pole and rejected others, based on various criteria.

15.     In September 2024, two Nashua residents—Stephan and Bethany Scaer—challenged Nashua's flag program as a violation of their First Amendment rights.

16.     On October 7, 2024—while the Scaers' case was in litigation—the City of Nashua repealed its previous flag policy and no longer allowed people to apply to fly flags on the pole.

17.     After Nashua changed its flag policy in October 2024, the city continued to fly non-governmental flags on a flag pole in front of city hall. In the approximately year and a half since October 7, 2024, Nashua has flown, for example, the Progress Pride Flag as well as flags celebrating the independence days of foreign countries such as India, Greece, and the Dominican Republic.

18.     On December 22, 2025, the United States Court of Appeals for the First Circuit held that the flags flown on Nashua's fourth flag pole during the time period at issue in the Scaers' case were not government speech but rather the speech of the private citizens who had applied to fly those flags. As a result, the city could not select which flags to fly based on the viewpoint of the flags. *See Scaer v. City of Nashua*, 162 F.4th 256 (1st Cir. 2025).

19.     On January 7, 2026, Nashua's Mayor, Jim Donchess, proposed Ordinance O-26-001, in response to the First Circuit's decision. This ordinance, among other things, sought to close all four of the city hall flag poles to private speech.

5

20.    Exhibit A is a true and correct copy of a certified text of Ordinance O-26-001.

21.    A final vote approving or disapproving Ordinance O-26-001 was on the meeting agenda for the Nashua Board of Aldermen's February 10, 2026, meeting.

22.    During the February 10 meeting, Mayor Donchess stated that, if Ordinance O-26-001 passed, he "would continue" to fly the Pride Flag and foreign country flags in front of city hall, just he had during the approximately year and a half since October 7, 2024.

23.    Exhibit B is a true and correct copy of the minutes for the February 10, 2026, meeting.

24.    The City of Nashua has also uploaded a video recording of the February 10 meeting at https://www.youtube.com/watch?v=E-_ghiwGR0M.

*Plaintiff's Public Comments at the February 10 Meeting*

25.    Simon Amaya Price is a political activist who speaks and writes about protecting children who suffer from gender dysphoria. He frequently speaks against social and governmental efforts to promote gender ideology and has testified about these issues at legislative hearings, local government meetings, and even the Federal Trade Commission.

26.    Amaya Price is a "desister"—that is, that is, someone who formerly identified as transgender and socially transitioned but has since returned to identifying with his biological sex.

27.     Amaya Price resides in Massachusetts but often comes to New Hampshire. Although he has spoken about gender ideology in more than a dozen states, his political activism focuses on Massachusetts and New Hampshire.

28.     On February 10, 2026, Amaya Price attended a regularly scheduled meeting of the City of Nashua's Board of Aldermen to urge the aldermen to vote against Ordinance O-26-001 in the form it was proposed.

29.     Amaya Price is a friend of Bethany and Stephen Scaer, the plaintiffs in *Scaer v. City of Nashua.* He attended the February 10 meeting along with various friends, including the Scaers.

30.     At the start of the meeting, Amaya Price signed up to speak during the first of the two public comment periods. During his public comment, he intended to explain that Ordinance O-26-001 did not go far enough and would not fix the problem because it still allowed Nashua to fly non-governmental flags such as the Progress Pride Flag and the flags of foreign countries.

31.     Amaya Price intended to urge the Board of Aldermen to pass an ordinance limiting the city hall flag poles to government flags such as the American Flag, the New Hampshire state flag, and American military flags such as the POW/MIA Flag. He believes that flags supporting ideological or political positions—such as the Progress Pride Flag—should not be allowed.

32.     Amaya Price, like many other detransitioners and desisters, finds the Progress Pride flag to be an extremely painful symbol because he understands this flag to promote adult mistreatment of children suffering from gender dysphoria.

7

33.     Seven people arose to give public comment during the February 10 meeting—four in the earlier comment period and three in the later. Amaya Price was the last speaker during the earlier period. With the exception of Amaya Price, all the commenters were permitted to speak for up to their full three minutes of speaking time without interruption.

34.     Although all six of the other speakers stated their name at the start of their public comments, two did not provide their specific address. Instead, one speaker only identified which of Nashua's city ward he lived in. Another commenter did not state his address or his city ward.

35.     When Amaya Price came to the podium, he began by stating his name and that he had come "to speak in regards to ordinance 26-001." The Board of Aldermen's president, Lori Wilshire, then asked Amaya Price's address.

36.     Because Amaya Price frequently receives death threats for his political advocacy, he is not comfortable publicly disclosing his home or business address.

37.     People often recognize Amaya Price, from his speech, social media presence, and media appearances. Indeed, one of Nashua's aldermen (Alicia Gregg) seemed to have recognized Amaya Price that very evening.

38.     The City of Nashua uploads videos of its Board of Aldermen meetings, including recording of public comments, to the internet. For instance, a video recording of the February 10 meeting is available at https://www.youtube.com/watch?v=E-_ghiwGR0M. As a result, if a speaker discloses

his or her name and address, that information is available online, to people who did not physically attend the meeting.

39. After Wilshire asked for his address, Amaya Price responded that he had been advised to keep his address private, for security reasons. Amaya Price asked if that was "acceptable." Wilshire initially answered "yes." Amaya Price thanked Wilshire and prepared to give his comments.

40. Nashua's Corporation Counsel then interrupted to state that Nashua's "ordinance requires" an address. President Wilshire repeated this requirement. After a brief discussion about the scope of Nashua's rule between Wilshire, Corporation Counsel, and one alderman (Ben Clemons), Wilshire asked if Amaya Price had a business address that he could provide, instead of a home address.

41. Because Amaya Price works as a self-employed political activist, he does not possess a business address that is different than his home address. Moreover, even if he had a business address, Amaya Price would have been unwilling to disclose that as well, because of the same security concerns.

42. Had it been an option, Amaya Price would have been comfortable telling the Board publicly that he resides in Massachusetts—not in Nashua or in New Hampshire in general.

43. Because the Board of Aldermen would not permit Amaya Price to speak without publicly stating his home or business address from the podium, he forfeited the remainder of his time and sat down, without commenting further.

44. After the public comment period ended, the Board of Aldermen voted to adopt Ordinance O-26-001.

*The Continuing Impact of Defendants' Actions on Plaintiff*

45. Simon Amaya Price wants to comment publicly at future meetings of the City of Nashua's Board of Aldermen, to express his opposition to gender ideology and his support for policies and practices that protect children with gender dysphoria.

46. In future public comments, he intends to criticize Nashua's new ordinance, which allows the city to continue to fly flags expressing ideological and political positions, such as the Progress Pride Flag. He wants to urge Nashua to limit flags on city hall plaza to purely governmental flags.

47. In future public comments, Amaya Price also intends to criticize Nashua's address rule and its past enforcement of this rule, because Amaya Price believes this rule disproportionately deters speakers who want to address controversial topics or to take unpopular positions.

48. In future public comments, Amaya Price also intends to criticize the City of Nashua's treatment of First Amendment rights. Amaya Price would discuss how perverse he finds it that—during a meeting supposedly seeking to fix a City of Nashua policy that a federal court had declared unconstitutional—the Board of Aldermen would enforce a different rule equally offensive to the First Amendment.

49. In future public comments, Amaya Price also intends to criticize the Board of Aldermen's selective enforcement of the address requirement. Even during

10

the February 10 meeting, two speakers were allowed to comment publicly without stating their precise home or business address.

50. Amaya Price believes, however, that for the foreseeable future Wilshire and the City of Nashua will not permit him to give public comments unless he discloses his home or business address. He believes that, if he were to seek to speak in the future, he would again get interrupted, be prohibited from speaking unless he disclosed his address, and have to forfeit his time.

51. In order to speak again, Amaya Price believes that he would need to disclose his address from the podium, as the Board of Aldermen insisted on February 10. As a result, Amaya Price has refrained from seeking to speak again at meetings of the City of Nashua's Board of Aldermen.

52. Unless he obtains protection from the Court, Amaya Price expects that he will not give public comment about any subject at future meetings of the City of Nashua's Board of Aldermen.

COUNT ONE
UNREASONABLE RESTRICTION, FACIAL CHALLENGE
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

53. Plaintiff realleges and incorporates by reference paragraphs 1 through 52.

54. The public-comment periods at regular meetings of the City of Nashua's Board of Aldermen constitute limited public fora for private speech by the general public because the board opens these periods up for "the public or others," Nashua Ord. § 5-14(A)(9a), to comment on the board's resolutions, ordinances, communications, or actions. *See, e.g.*, *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 & n.7 (1983); *McDonough v. Garcia*, 116 F.4th 1319, 1328-29

11

(11th Cir. 2024) (en banc); *Santucci v. Levine*, No. 17-cv-10204 (NSR), 2019 U.S. Dist. LEXIS 133736, at \*26 (S.D.N.Y. Aug. 8, 2019) (collecting cases). A limited forum exists whenever a government has "reserv[ed a forum] for certain groups or for the discussion of certain topics." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

55.    "Once it has opened a limited forum . . . the State must respect the lawful boundaries it has itself set. The State may not exclude speech where its distinction is not reasonable." *Id.* (internal quotation marks and citations omitted). The First Circuit treats "limited public forum" and "nonpublic forum" as synonyms. *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 76 n.4 (1st Cir. 2004) (citing cases); *see also Curnin v. Town of Egremont*, 510 F.3d 24, 28 (1st Cir. 2007). In a limited public forum or a nonpublic forum, government restrictions on speech and petition "can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985).

56.    In a forum designed for "constructive dialogue through the public's comments," reasonableness is "necessarily a more demanding test than in forums that have a primary purpose that is less compatible with expressive activity." *People for the Ethical Treatment of Animals v. Tabak*, 109 F.4th 627, 636 (D.C. Cir. 2024) (internal quotation marks omitted).

57.    "Freedom of speech includes both the right to speak freely and the right to refrain from speaking at all. *Janus v. AFSCME, Council 31*, 585 U.S. 878, 892

12

(2018) (cleaned up). That means "[c]ompelled speech is subject to the same analysis as prohibitions from speaking." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 426 (E.D. Pa. 2021) (citing *Riley v. Nat'l Fed'n of Blind, Inc.*, 487 U.S. 781, 796–97 (1988)). Moreover, "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972).

58.     The City of Nashua's address requirement is unreasonable, because it serves no purpose and chills speech. Nashua does not impose a residency requirement on speakers or use any other rule turning on where a speaker lives or works. Thus, the city has no need for a speaker's exact address.

59.     Even if Nashua did restrict public comment to Nashua residents, the city has other ways to collect and verify addresses that would not chill speech. The Board of Aldermen already mandates that people intending to speak sign up for their speaking slot prior to the start of the meeting. The Board could easily verify addresses privately during that process. The Board could also simply require speakers to disclose what town or ward they live in (as one speaker at the February 10 meeting did) rather than give their exact address. Requiring speakers to publicly announce their address from the podium, rather than privately, furthers no legitimate interest that the Board has in regulating its public comment period.

60.     Moreover, the address rule undermines the entire purpose of public comment: empowering interested citizens to provide input germane to the meeting's agenda. "The chilling effect of being forced to announce to all present one's actual

home address before speaking on a hotly-contested issue is clear." *Marshall*, 571 F.
Supp. 3d at 426; *see also Moms for Liberty - Wilson Cty. v. Wilson Cty. Bd. of Educ.*,
155 F.4th 499, 517 (6th Cir. 2025) (Thapar, J., concurring) ("Forcing commenters to
disclose their home addresses before speaking on controversial or hot-button issues
seems particularly likely to silence a would-be speaker.").

61.    Public disclosure of one's home or business address exposes the speakers
and their families to potential reprisals for unpopular speech. Individuals, including
Plaintiff, who might otherwise express controversial views are unlikely to do so if
forced to disclose their address during a public meeting. Especially so, given that
the Board of Aldermen places both detailed minutes of its meeting and a video
recording of its meeting online, for anyone to view.

62.    This chilling effect compounds the unreasonableness of the disclosure
requirement. Nashua's address rule unreasonably deters speakers who want to
discuss controversial topics or take unpopular positions—preventing the board from
hearing a particular set of viewpoints and input prior to making decisions on
resolutions and other matters.

63.    By unreasonably enforcing the address requirement, Defendants, under
color of law, deprived and continue to deprive Plaintiff of his rights to freedom of
speech and freedom of petition in violation of the First and Fourteenth
Amendments to the United States Constitution. Plaintiff is thus damaged in
violation of 42 U.S.C. § 1983 and is entitled to damages; declaratory relief; a
permanent injunction against continued enforcement and maintenance of

14

Defendants' unconstitutional address requirement; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT TWO
UNREASONABLE RESTRICTION, AS-APPLIED CHALLENGE
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

64.    Plaintiff realleges and incorporates by reference paragraphs 1 through 52.

65.    Even if a disclosure requirement is reasonable for the ordinary person, it can be unconstitutional when applied to persons or groups at greater risk of physical or economic reprisals for exercising their First Amendment rights. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958). In such cases, the government bears the burden of showing "an interest in obtaining the disclosures it seeks from petitioner which is sufficient to justify the deterrent effect on the free enjoyment of the [First Amendment] right." *Id.* at 463.

66.    The government may not "suppress speech . . . for mere convenience" when less burdensome alternatives exist. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). Rather, "[i]n a limited public forum, the government may 'regulate features of speech'" only if those restrictions "are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (quoting *McCullen*, 573 U.S. at 477, and applying its standard to public comment at a local board meeting).

67.    The City of Nashua has no significant interest in obtaining the home or business addresses of speakers from vulnerable populations such as detransitioners

and desisters, who are liable to experience bullying, threats, or violence if their address is known. As a desister, Plaintiff is a member of such a vulnerable group.

68.    Moreover, as a prominent desister, Plaintiff frequently receives death threats for his political advocacy. As applied to Plaintiff, the address requirement has significantly greater chilling effect than it would upon an ordinary person who is not a public figure. Even if it were reasonable to require most speakers to state their address, this greater chilling effect makes it unreasonable as applied to Plaintiff and people like him.

69.    President Wilshire initially acknowledged that security concerns justified keeping a specific speaker's address private when she agreed with Plaintiff that it was "acceptable" for him to not disclose his address. Wilshire only backtracked when the City of Nashua's Corporation Counsel reminded her that the City's ordinance did not give her enforcement discretion.

70.    By unreasonably enforcing the address requirement, Defendants, under color of law, deprived and continue to deprive Plaintiff of his rights to freedom of speech and freedom of petition in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983 and is entitled to damages; declaratory relief; a permanent injunction against continued enforcement and maintenance of Defendants' unconstitutional address requirement; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

16

PRAYERS FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. Orders permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from requiring that individuals speaking at Board of Aldermen meetings disclose their address, or in the alternative, that Plaintiff be required to disclose an address in order to speak before the Board of Aldermen;

2. Declaratory relief consistent with the injunction, to the effect that:

   a. The City of Nashua's address rule requiring that individuals disclose their address before giving comment at Board of Aldermen meetings violates the First Amendment and Fourteenth Amendments' rights of speech and petition; and

   b. Defendants violated Plaintiff's First Amendment rights by enforcing the address requirement against Plaintiff;

3. An award of nominal damages in the amount of $17.91;

4. Cost of suit, including attorney fees and expenses pursuant to 42 U.S.C. § 1988; and

5. Any other relief as the Court deems just and appropriate.

Dated: March 23, 2026                    Respectfully submitted,

                                   By:   */s/ Roy S. McCandless*
Brett Nolan*                             Roy S. McCandless

17

DC Bar No. 90014964
Nathan Ristuccia*[1]
Virginia Bar No. 98372
INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036
202.301.3300
bnolan@ifs.org
nristuccia@ifs.org

New Hampshire Bar No. 11850
ROY S. MCCANDLESS, ESQ., PLLC
125 North State Street
Concord, New Hampshire 03301
603.841.3671, Ext. 101
roysmccandless@gmail.com

* Application pro hac vice to be filed

---

[1] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).